FILED
2007 Aug-20 PM 06:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| PLAINTIFF, | ) |
| V. | ) |
| | ) CASE NO.4:07-CR-145-UWC-RRA |
| JAMES RAY McELROY, | ) |
| | ) |
| DEFENDANT. | ) |

## OBJECTIONS TO PRE-SENTENCE REPORT

COMES NOW the Defendant, James Ray McElroy, by and through undersigned counsel, and hereby makes the following objections to the Pre-Sentence report ("PSR") and Guideline calculation submitted to this Court by the U.S. Probation Office on August 7th, 2007.

1.  Defendant objects to the reference to James Ray McElroy on page 8, paragraph 27, without the inclusion of the rank he held in the militia. In the case of every other Co-Defendant, their rank was disclosed in the PSR on the first mention of their interaction with the Confidential Informant. Co-Defendant Dillard held the rank of Major in the militia, Co-Defendant Hughes held the rank of Captain, Co-Defendant Cole held the rank of Lieutenant, the Confidential Informant held the rank of Sergeant-Major, and Co-Defendant Cunningham held the rank of Sergeant. James Ray McElroy held the rank of private, and this fact should be added to the PSR, as it is one of the central facts supporting Mr. McElroy's contention that a four-point downward departure is appropriate for his minor involvement in the offense conduct.

2.  Defendant objects to paragraphs 35-37 of the PSR as they detail activity and weapons, specifically, but not limited to, machine guns and rocket launchers, pertaining only to Co-Defendants Dillard and Hughes and should be stricken from the report as irrelevant to the sentencing of James McElroy.

3.  Defendant objects to page 10, paragraph 44, of the PSR in which the Probation Office recommends a four-point increase in the offense level based on the number of firearms involved in the underlying offences. ,In Application Note #5 to the commentary to § 2K2.1, it specifically states that this enhancement is only to count and include those firearms 'unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed…'.

The charged offenses to which Mr. McElroy pled guilty were conspiracy to and the actual making of some 10 grenades, but nowhere in the plea agreement, or in the facts as presented to this Court, is there any indication that Mr. McElroy sought to obtain for his own use any destructive device, nor did he possess or distribute a destructive device. The evidence as recited in the plea agreement and in the PSR, paragraphs 27, 29 and 31, indicate that while James McElroy did make efforts to help complete grenades, specifically by spray painting hulls and stripping aluminum from fuses, there is no indication that he was even present when a single destructive device was, in fact, completed. In paragraph 31 an incident is described in which he led the confidential informant to a box in the woods where there were 23 grenades which 'appeared to be completed'. At this point, however, he was on the property of Co-Defendant Cunningham, and his mere knowledge of the location of the grenades on another's property is insufficient to establish his possession of those grenades. Indeed, in paragraph 30 of the PSR, Co-Defendant Cunningham boasts of how well he knows the land behind the house and how well the grenades are hidden, indicating that McElroy's knowledge of their whereabouts was premised on having been directed to them, and not through any effort which would have necessarily put him in possession of those grenades at any time. And finally, paragraph 32 of the PSR indicates that the grenades on Cunningham's property which 'appeared' to be complete were not, in fact, completed explosive devices.

When the tent in which Mr. McElroy resided was searched, no destructive devices were found. When Mr. McElroy was arrested, there were no weapons on his person. And there is absolutely no evidence before this Court in the plea agreement or the PSR that Mr. McElroy, who has admitted to his limited role in making destructive devices, was ever present when any destructive device was ever completed, much less that he possessed one, distributed one, or tried to obtain one. Because there is no indication from the record that Mr. McElroy ever possessed, sought to obtain or distributed any destructive device, the four-point enhancement proposed in paragraph 44 of the PSR is due to be rejected.

4. Defendant objects to page 10, paragraph 45, of the PSR to the degree that it states that Mr. McElroy "possessed" a destructive device. Defendant concedes that the offense to which he pled guilty "involved" a destructive device as required by § 2K2.1(b)(3)(B).

5. Defendant objects to page 10, paragraph 48, of the PSR in which the Probation Office states that nothing has been provided that would support a mitigating role downward departure. Specifically, the fact that Mr. McElroy was a 'private', the lowest ranked member of the militia, as testified to by the case agent at the Detention Hearing, could certainly be construed as information that Mr. McElroy was a minor participant in the criminal activity of the group as defined in §3B1.2(b). Mr. McElroy did not provide any funds to aid the criminal conduct, did not provide any special expertise or perform any acts essential to the creation weapons per se, did not initiate any of the group's plans or endeavors, nor did he direct any others to perform activities on his behalf. On the contrary, Mr. McElroy acted in a manner very much consistent with what one would expect from a young man of limited education who seemed, in the words of his own Juvenile Probation Officer, "to always be longing for a sense of acceptance and

belonging". (See PSR, page 13, paragraph 59). He followed orders, aided the construction of the grenades in question by performing minor tasks such as spray painting the hulls, and generally followed the lead of men older, more educated, and more charismatic than he in an effort to belong. As such, Mr. McElroy is due to receive a two-point reduction in his offense level based upon his acting as a minor participant in the criminal conduct at issue.

6.  Defendant objects to page 11, paragraphs 50 and 53, of the PSR, in which the Guidelines are applied erroneously by the Probation Office to calculate an Adjusted Offense Level of 24 and a Total Offense Level of 21. For the reasons enumerated in paragraphs 1-5 of this motion, the calculations in paragraph 44 of the PSR erroneously apply a four-point enhancement under § 2K2.1(b)(1)(B), and in paragraph 48 the Probation Office fails to apply a two-point downward departure pursuant to §3B1.2(b). The resultant Adjusted Offense Level in paragraph 50 should, therefore, be 18 and the new Total Offense Level in paragraph 53 should be 15.

7.  Defendant objects to the criminal history category computed in the PSR on pages 12-14, paragraphs 55-64.  Specifically, Mr. McElroy contends that the conduct described in paragraph 58 should not give rise to an added criminal history point.

Mr. McElroy was adjudged a juvenile delinquent in 2002 at the age of 16 when he yelled at and disobeyed his father and ran away from home to avoid going to school. Listed offenses that are never counted for purposes of criminal history points found in § 4A1.2(c)(2), include juvenile status offenses and truancy, which should apply in this case and reduce Mr. McElroy's criminal history points by the one that was added in paragraph 58.

It is especially important that, in the interests of justice, Mr. McElroy's criminal history points be reduced by at least one point because, as it stands, Mr. McElroy's criminal history classification is at Level III, which seriously over-represents this Defendant's criminal history and should, therefore, be subject to a downward departure pursuant to §4A1.3(b)(1).  Of the four points attributed to Mr. McElroy by the Probation Office, three stem from a single misdemeanor marijuana possession conviction, along with a single misdemeanor paraphernalia conviction, and the fourth stems from an incident nearly five years ago when Mr. McElroy refused to go to school and briefly ran away from home.  There are no felonies on Mr. McElroy's record, nor any juvenile adjudications that would be classified as felonies had they been committed by an adult, and yet Mr. McElroy is facing a criminal history classification identical to someone who had received three points each for two prior unrelated felony convictions.

It is respectfully submitted that if §4A1.2(c)(2) doesn't require this Court to reject the proposed addition of one criminal history point for the juvenile offense described in paragraph 58 of the PSR, §4A1.3(b)(1) should lead this Court to subtract one point and depart downward to a criminal history category of II. This is appropriate because the over-representation of Mr. McElroy's criminal history by a calculation of his status as a Level III criminal offender, despite having only a single plea to two misdemeanor drug possession charges as his only adult adjudications, would lead to harsher sentencing for Mr. McElroy than for those others with substantially similar backgrounds.

8.      Defendant objects to page 18, paragraph 92, of the PSR, in that there are mitigating circumstances which might warrant a downward departure including, but not limited to, Mr. McElroy's history, the specifics of his offense conduct, and his behavior since his incarceration.

For all the foregoing reasons, the proper offense Level for James McElroy is 15 and the proper criminal history category is II.

RESPECTFULLY SUBMITTED,


*/s H. Hube Dodd*
H. HUBE DODD


OF COUNSEL:

JAFFE, STRICKLAND, DRENNAN & DODD, P.C.
2320 ARLINGTON AVENUE SOUTH
BIRMINGHAM, AL  35205
205-930-9800


CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 20th day of AUGUST, 2007, served a copy of the foregoing by United States mail, postage prepaid and properly addressed, and/or by hand-delivery, and/or electronically filed, to Assistant United States Attorney Michael W. Whisonant, and Special United States Attorney Enid E. Dean, United States Attorney's Office, 1801 4th Avenue North,  Birmingham, AL  35203.


*/s H. Hube Dodd*
H. HUBE DODD